Argued April 26, affirmed as modified July 5, 1978

SMITH, *Claimant,*
*v.*
GEORGIA-PACIFIC CORPORATION, *Respondent.*
(WCB 76-899, CA 9561)
580 P2d 1071

Robert S. Gardner, Corvallis, argued the cause for petitioner. With him on the brief was Ringo, Walton, Eves & Gardner, Corvallis.

Jack L. Mattison, Eugene, argued the cause for respondent. With him on the brief was Jaqua & Wheatley, Eugene.

Before Schwab, Chief Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

In this Workers' Compensation case, the sole issue is the degree of claimant's disability. The determination order allowed claimant 15 percent unscheduled disability for injury to his back. A referee increased his award to 60 percent. Employer appealed to the Workers' Compensation Board, which reduced the referee's award to 30 percent unscheduled disability. Claimant appeals, seeking to have the referee's award of 60 percent unscheduled disability reinstated.

At the time of the hearing, claimant, who is 42, had worked steadily for nearly 19 years for the employer, the last few years as a dryer tender.

Claimant experienced a prior low-back injury in 1969. As a result of this first injury, claimant was awarded a permanent partial disability award of 32 degrees (10%).

A second on-the-job injury occurred on January 1, 1973, when claimant, while working as a dryer tender, slipped and fell on a piece of veneer. The injury was diagnosed as lumbar spasm and probable herniation of a disk. Claimant returned to work in April, 1973, although his condition was not medically stationary and he was still being treated by his doctors. Doctors following claimant's progress became concerned late in 1973 when they noted an increasing degree of paresthesia (loss of sensation) in both feet. It was finally necessary to perform an exploratory lumbar laminectomy on claimant on July 15, 1974. The claimant returned to his job in October, 1974. He was deemed to be medically stationary in January, 1975. The Board then directed an additional award of 48 degrees (15%) unscheduled disability.

Thereafter, however, claimant's condition again worsened. He had pain in the lower extremities and in the low back, and difficulty in sleeping. Claimant's claim was reopened.

The final medical diagnosis of claimant indicates the following: claimant feels better than he did prior to the laminectomey in 1974, but continues to experience significant pain. His present symptoms appear to be completely consistent with—and probably due to—degenerative disk disease. Drugs and supporting corset are indicated. The examining physician, Dr. Tiley, was of the opinion that claimant was lucky to be able to continue working at his usual employment as a dryer tender for the employer. Dr. Tiley predicted intermittent treatment would be required for an extended period of time.

In spite of his increasing pain, claimant had continued to actively work at his job, putting in eight to ten hours of overtime per week in addition to his regular forty hours. He is not able, however, to do any significant physical work around the farm which he, his wife and children own some seventeen miles from his place of employment, or to take part in other activities he used to enjoy such as hunting, rowing boats and digging clams.

We are in general agreement with the analysis of the referee:

"This man is working full time at his job as dryer tender and generally on an overtime basis. His present earnings have not been affected, but his employability with some firm other than Georgia-Pacific has been substantially reduced. His seniority in the company assures him some consideration and concern that he would not likely receive elsewhere with a new employer. He gets much assistance and help in doing his job as a dryer tender. His physical impairment is substantial. He has to use a brace or a corset to do what he must do in performing his job. The medical testimony gleaned from the report indicates substantial pain. It is all that he can do to keep going on this job. At home he doesn't do anything around his stump ranch involving any physical stress.

"Dr. Tiley points out that this claimant is fortunate that [he] can continue to be employed as a dryer tender

despite the job hazards. It is quite evident that aging and working will accentuate his difficulties in working and may increase his disability, Dr. Tiley makes it clear that he will have intermittent problems of disability and pain and suffering.

"The pain, suffering, discomfort, weakness and immobilizing effects of his January 1, 1973, injury are substantial and produce significant physical impairment reducing his ability to work and the resulting earning capacity in most manual labor jobs for which he might be qualified by his limited work experience and limited education and age. This forty-one-year old working man, with an eighth grade education and with all his job experience related to the woods and the mills, would find it exceedingly hard to work anywhere other than with Georgia-Pacific. His own admirable determination to keep going on the job for the company for which he has worked since April, 1958, in a work situation where he can secure the sympathetic and understanding help of his assistant dryer tender and other workers about the dryers, could not readily be duplicated in some other job. There is good reason from his testimony and medical report to conclude he will not be able to continue to work until the usual retirement age."

The record fully supports the observations of the referee. Accordingly, we conclude that the award of the Board is too small and, on *de novo* review, assess the appropriate award to claimant as being compensation equal to 128 degrees or 40 percent unscheduled low back disability. This award is in lieu of, and not in addition to, the previous award for unscheduled low back disability made in the determination of February 26, 1975. It is in addition to his earlier 10 percent award.

Affirmed as modified.